BEER, Judge.
Our review of this record leads us to factual and legal conclusions very much different than the “Reasons for Judgment” contained therein and obliges us to state our appreciation of the facts of this case so that a reviewing court may have the benefit thereof. We conclude that the testimony and exhibits materially contradict the “Reasons for Judgment” and find as follows:
Brenda Pisciotta was a part-time clerk in the catalog sales department of Sears, Roebuck & Company, located in the Clearview Shopping Center. As a result of the incident hereinafter described, she was injured in the course and scope of her employment and, thereafter, received all available employee benefits, including medical expenses and compensation payments, due in the premises.
She filed this tort claim against numerous defendants, some of whom were dismissed on motions after clear and unequivocal showings that they had absolutely nothing to do with anything that transpired on the day in question and some of whom have been cast in these proceedings. Those cast have appealed.
On October 1, 1975, work was in progress on renovations at Sears, Clearview facility. Gulf Best, the only contractor on the job who was at work that day, had employees installing a valance at a point near the spot where Pisciotta was working behind the counter in the catalog sales department. While this valance installation was in progress, a 2' X 4' plastic openwork panel weighing approximately three pounds fell from the ceiling above her, causing an injury which the “Employee Accident Preliminary Report” describes as follows: “Cut middle finger — (metal) pos. break — bad bruise & cut — needs tetanus left hand.” [1]
The accident above described happened on a Wednesday. Plaintiff returned to work on Friday of the same week and worked steadily after that throughout the balance of October and all of November, December, January, February, March, and into April, when she quit working because Dr. Russell Levy recommended that she do so. Plaintiff made it clear that she worked continuously during the time above described and only stopped because of Dr. Levy’s recommendation. Shortly thereafter, this suit was filed, alleging, among other things, negligence on the part of Gulf Best’s employees and on the part of certain Sears’ supervisory personnel, contending that they had negligently permitted the remodeling work to proceed without clearing Sears’ employees from the area when they knew or should have known that they might be injured. In her deposition, plaintiff sought to verify this contention by reference to a Miss Bullock, a Sears’ employee, by way of the following response: “Miss Bullock said something about they really should do something about it because that was the *617 second or third accident.” When asked who Bullock was referring to by “they,” Pisciot-ta replied: “I don’t know.” But, Bullock was never called to testify at the trial of this case, and the record is devoid of any evidence that any of the Sears’ supervisory personnel, found guilty of negligence in the “Reasons for Judgment,” had any actual or imputed knowledge of any prior incident of any injury of any Sears’ or other employee resulting in any way from the remodeling work in progress. On the basis of the record, the facts are completely to the contrary: there were no previous incidents; there was no reason to believe that this incident would occur; and there was no proof of any nature whatsoever to support any sort of contention that the Sears’ supervisory personnel should have cleared the area of Sears’ employees for any reason whatsoever.
The same cannot be said for Gulf Best. Though there is little or no indication of any actual negligence in the performance of their work, we believe that there is support in the record for the conclusion that Gulf Best’s employees knew or should have known that their work — even assuming skillful and workmanlike performance— could cause one or more of the above described panels to shake loose — as obviously was the case here — and fall. We conclude that their actions in not expressing this possibility to those in the immediate area, such as Pisciotta, breached their legal duty to her. Accordingly, we turn to a consideration of the quantum issue.
We find great disparity between the record and the “Reasons for Judgment” as we turn to a consideration of the issue of the damages allegedly incurred by Pisciotta. Although the “Reasons for Judgment” come to the immediate (yet essentially unsupported and undiscussed) conclusion that Pisciotta’s back claim (dubious itself and to be discussed in detail later) was the result of the incident, the record indicates otherwise:
Dr. Guzetta, who saw plaintiff immediately following the incident, concluded that she had “. . . minor lacerations of the finger, not enough to suture but merely to put an antibiotic dressing on it, and I don’t think we gave her a tetanus shot and I discharged her. We didn’t have to see her any further.” Asked if she had made any complaints at all about her head, neck or back, he answered in the negative; asked if such complaints had been made would they have been entered on his report, he answered in the affirmative. Indeed, there is no clear testimony to indicate that plaintiff suffered any back or neck pains referable to the accident until around the time that she was referred to Dr. Levy and quit work in April of the following year except for an isolated instance of a complaint in November, approximately six weeks after the accident.
Even so, the question of what, if anything, was causing the alleged back or neck pain looms unanswered in this record. Although Pisciotta was briefly hospitalized for conservative therapy of her alleged back pain, she left on her own volition after refusing to undergo any of the recommended objective tests which might indicate a basis for her various complaints. Thus, the evidentiary basis for the disc involvement conjectured by Dr. Vogel is highly questionable. Likewise, the “Reasons for Judgment” refer to plaintiff’s “decreased earning capacity,” apparently indicating some trial court determination, unexplained in the “Reasons,” that she can no longer do all of the part-time work that she previously was doing (approximately 28 hours a week) at the rate of $2.60 per hour. Such conclusion then forms the basis, apparently, for an award of $44,441 as the present value of her future earnings loss, which is awarded in addition to $35,000 for general damages.
Pisciotta’s middle finger injury healed without complication and without the necessity of any sort of surgical intervention or, for that matter, any need for a tetanus shot. At best, her alleged back pain falls into the category of an unconfirmed claim with little or no relation to the incident of October 1,1975 and even less as substantiation for any sort of continued inability to *618 perform the same sort of basic clerical work that she was doing on a part-time basis as clerk in the catalog sales department when the incident occurred and which she continued to do for over six months thereafter.
We have concluded that the amount of the award constitutes an abuse of the trial court’s discretion.
Aware, however, of the mandate of our Supreme Court in matters such as this and taking all pertinent factors into consideration, we conclude that the highest award that this record will support (and considerably higher than we would otherwise award) should be a total of $15,000.
We concludé that the trial court has manifestly erred in its determination of liability on the part of the supervisory personnel of Sears Roebuck and further conclude that the quantum of the award for damages is manifestly in error and unsupported by the record.
Accordingly, the judgment of the 24th Judicial District Court for the Parish of Jefferson is amended and recast as follows:
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in favor of plaintiffs, Brenda Pisciotta, wife of/and Joseph Pisciotta, and against defendants Gulf Best Electric Company and The Fidelity and Casualty Company of New York, in solido, in the sum of $15,000, together with interest at the legal rate from the date of judicial demand.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that plaintiffs’ claim against R. B. Coleman, William Laughmiller and Lang Eddins be and the same is hereby dismissed.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of intervenor, Sears, Roebuck & Company, to such extent as is possible under the terms and provisions of this judgment.
All costs, including those of the expert witnesses, are taxed against Gulf Best Electric Company and The Fidelity and Casualty Company of New York, in solido.

REVERSED IN PART, AMENDED IN PART, AFFIRMED IN PART.

. There is an additional entry written across the report and obviously written at a later date which says: “Also hurt back but did not notice pain until a day or two later — ”